UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| STARBUCKS CORPORATION<br>d/b/a STARBUCKS COFFEE COMPANY,<br>a Washington corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. _____7:15-CV-206_____ |
| STEVEN BLOOD, a Georgia resident, d/b/a<br>MERMAID CAFE, | ) ) ) | |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT

Plaintiff Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks"), states the following for its Complaint against Defendant Steven Blood d/b/a Mermaid Cafe ("Defendant"):

### PARTIES

1.     Starbucks is a Washington corporation with its principal office at 2401 Utah Avenue South, Seattle, Washington 98134.

2.     Defendant is a Georgia resident doing business as Mermaid Cafe, which has its principal place of business at 15369 US Highway 19 South, Thomasville, Georgia 31792.

### JURISDICTION AND VENUE

3.     Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

4.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this case arises under the Trademark Act, 15 U.S.C. § 1051, *et. seq*. and the Copyright Act, 17 U.S.C. § 101 et seq. Jurisdiction over the additional state-law claims exists under 28 U.S.C.

1

§ 1367. Jurisdiction also exists under 28 U.S.C. § 1332, as this is an action between a company headquartered in Washington and a defendant located in Georgia, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.      Defendant is believed to reside and have his principal place of business in this District, and a substantial portion of the activity about which Starbucks complains has taken place in this District. Therefore, this Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1391.

## COMMON ALLEGATIONS

### The Starbucks Coffee Business and Intellectual Property

6.      Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

7.      Starbucks is a leading purveyor of fine Arabica coffee. The company, which began in 1971, has grown from a single location to approximately 12,000 retail locations in the United States and more than 8,000 locations in over 60 foreign countries. Starbucks retail stores serve brewed coffee, espresso-based beverages, teas, blended beverages, soft drinks, and other foods and beverages, and carry packaged coffee, instant coffee, coffee equipment, mugs, and other Starbucks-branded merchandise. These stores will conduct billions of transactions in 2015. United States customers complete more than 14% of those transactions using the Starbucks Card mobile app, or more than 5 million per week.

8.      Starbucks also markets and sells its products on the website resolving at store.starbucks.com. The website accessible at that address generates over 3 million unique visits every week. The trademarks and service marks at issue in this dispute appear on many of the in-

2

dividual web pages and are prominently displayed on merchandise available for sale on the store.starbucks.com website.

9.     Starbucks has developed a strong reputation for fresh-roasted specialty coffees, brewed coffees, espresso beverages, and other products and earned worldwide success as a result of its knowledgeable and well-trained staff, excellent service, and the consistency of its coffee experience for consumers. .

10.     Since 1971, Starbucks has used a number of trademarks and service marks consisting in whole or in part of the words STARBUCKS or STARBUCKS COFFEE (the "STARBUCKS Word Marks"). As documented in Exhibit A, the STARBUCKS Word Marks are covered by numerous registrations issued by the U.S. Patent and Trademark Office, including the following:

| Reg. No. | Mark | Goods and Services |
|----------|------|--------------------|
| 1444549 | STARBUCKS | retail store services and distributorship services for coffee, tea and spices; coffee cafe services |
| 1452359 | STARBUCKS | coffee, tea, spices, herb tea, chocolate and cocoa |
| 2073104 | STARBUCKS | wholesale supply and retail outlets services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk, powdered flavorings, flavoring syrups, baked goods, including muffins, scones, biscuits, cookies, pastries, cakes and breads, packaged foods, sandwiches and prepared foods, chocolate and confectionery items, granola, dried fruits, juices, soft drinks, electric appliances, namely, kettles, coffee makers, espresso makers and coffee grinders, housewares, non-electric appliances and related items, namely, insulated coffee and beverage cups (made of plastics and/or ceramics), non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers and non-electric plunger-style coffee makers, paper and non paper coffee filters, furniture, toys, books, musical recordings, T-shirts, caps, sweatshirts, jackets, aprons and |

3

| | | other clothing items; wholesale supply services featuring furniture; mail order services featuring ground and whole bean coffee and tea; and for restaurant, cafe and coffee house services |
|---|---|---|
| 2176977 | STARBUCKS | electrical appliances, namely, espresso makers and coffee makers for domestic and commercial use |
| 2180757 | STARBUCKS | electric coffee grinders for domestic or commercial use |
| 3298944 | STARBUCKS | Coffee; tea; cocoa; prepared coffee and coffee-based beverages; prepared espresso and espresso-based beverages; beverages made of tea; powdered chocolate (and vanilla); flavoring syrups to add to beverages; baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads; sandwiches; hot (and cold ready-to-eat fruit and whole grain based breakfast cereal;) iced tea, (ready-to-drink tea;)chocolate food beverages not being dairy-based or vegetable based; chocolate food beverages not being dairy-based or vegetable based with coffee flavors; cocoa products, namely, cocoa mixes and cocoa powder; hot chocolate; cocoa beverages with milk; prepared cocoa and cocoa-based beverages; preparations for making chocolate or cocoa based drinks, namely, powdered hot chocolate mix and powdered hot cocoa mix; chocolate and candy, namely, chocolates, chocolate bars, chocolate-covered coffee beans, chocolate-covered fruits, chocolate-covered nuts, chocolate-covered dried fruits, chocolate-covered crackers and chocolate toppings. |
| 3330858 | STARBUCKS | Retail music and record stores; retail outlets and on-line retail store services featuring CDs, books, and videos; electronic catalog services featuring CDs, books, and videos; promoting musical exhibitions and live music concerts of others through the distribution of printed promotional materials; Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars. |

These trademark registrations are incontestable under 15 U.S.C. § 1065 and therefore constitute conclusive evidence of the exclusive rights of Starbucks in, and the validity of, the Starbucks Word Marks.

US2008 7569975 4

11.    Starbucks also is the owner of two logo marks, both of which Starbucks uses exclusively and extensively to promote its products and services, namely, the Siren Logo and the 40th Anniversary Siren Logo (collectively "the Siren Logos"), as shown below:



| The Siren Logo | The 40th Anniversary Siren Logo |
|---|---|

As documented in Exhibit B, Starbucks has used the Siren Logo since 1992 and the 40th Anniversary Siren Logo since 2011. Starbucks owns numerous registrations of the Siren Logos in both black and white and in color, including the following:

| Reg. No. | Mark | Goods and Services |
|---|---|---|
| 1815938 | | non electric coffee makers, insulated cups, reusable non paper coffee filters, non paper coasters, thermal insulated bottles, and housewares; namely, coffee cups, non electric coffee pots not of precious metal, cups, mugs, dishes, trivets, and canisters<br><br>ground and whole bean coffee, cocoa, powdered chocolate<br><br>retail store services featuring the above goods as well as decorative magnets, and electric appliances; namely, power operated coffee grinders, espresso makers, coffee makers, percolators, and coffee pots; restaurant and cafe services |

US2008 7569975 4

| 1943361 |  | flavoring syrups for beverages |
|---------|---------|---------|
| 2120653 |  | ready-to-drink coffee, ready-to-drink coffee based beverages<br><br>coffee-flavored soft drink, flavored soft drinks and syrups and extracts for making the foregoing |
| 2266351 |  | ground and whole bean coffee; cocoa; herbal and non-herbal teas; coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, instant coffee; ready-to-drink coffee beverages; flavoring syrups for beverages; baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads; ice cream and frozen confections; chocolate; candy and confections and ready-to-eat cereals; all of the foregoing goods |
| 4415862 |  | Electric milk frothers<br><br>Paper coasters; paper cup sleeves; paper boxes and paper packaging; instructional booklets for making beverages<br><br>Paper cups, non-electric milk frothers; scoops<br><br>Communication services, namely, transmitting streamed and downloadable audio and video entertainment programming via computer, satellite and communications networks; audio entertainment broadcasting and transmission; electronic and digital transmission of voice, data, information, images, signals and messages; providing on-line chat rooms, bulletin boards and community forums for the transmission of messages among computer users concerning entertainment, music, concerts, videos, radio, television, film, news, sports, games and cultural events; delivery of messages by electronic transmission; provision of connectivity services and access to electronic communications networks, for transmission or reception of audio, video or multimedia content; providing multiple user dedicated access to the Internet; broadcasting and downloading service that allows users to playback, sample, download, store, create playlists and stream music, videos, movies, games and entertainment related programming over computers, wireless devices, PDAs, telephones, and digital listening |

US2008 7569975 4

| | | |
|---|---|---|
| | | and playback devices |
| 4538053 |  | Nutritionally fortified beverages; meal replacement and dietary supplement drink mixes, nutritional supplements in the form of food bars; powdered fruit-flavored dietary supplement drink mix; powdered nutritional supplement drink mix; and vitamin fortified beverage |
| | | audio recordings featuring classical, jazz, contemporary, pop, seasonal, R and B, soul, world, zydeco, reggae, rock, folk and show tunes music; downloadable music via a global computer network and wireless devices; vending machines |
| | | Electrical appliances, namely, espresso makers and coffee makers for domestic or commercial use |
| | | Publications and printed materials, namely, newsletters and magazines featuring information about coffee and coffee drinkers, pens, ball point pens, stationery, posters, paper napkins, paper coasters, paper bags |
| | | Hand operated coffee grinders and coffee mills, insulated coffee and beverage cups, non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers, non-electric plunger-style coffee makers, and decorative storage containers for food, non-electric tea kettles, tea infusers, tea pots, tea strainers, ceramic figurines, porcelain figurines; paper cups and insulated sleeves for beverage cups |
| | | T-shirts, polo shirts, sweatshirts, caps, hats, jackets, shorts, aprons |
| | | Milk, flavored milk, milkshakes and milk based beverages; fruit jams, fruit sauces, jellies, spreads, and preserves |
| | | Ground and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, beverages made with a base of tea, powdered chocolate; sauces to add to beverages; chocolate syrup, flavoring syrups to add to beverages, baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads, sandwiches, granola, ready-to-drink coffee, ready-to-drink tea, frozen confections; chocolate, candy and chocolate confections; and sauces |

7

Water, and other non-alcoholic drinks, namely, soft drinks, fruit drinks and fruit juices, fruit drinks and soft drinks containing fruit juices, powdered beverage mixes; flavoring syrups for making beverages; flavored and unflavored bottled waters, fruit juices, sparkling fruit and juice based beverages and soda beverages; frozen fruit beverages and frozen fruit-based beverages

Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; retail store services in the field of coffee, tea, cocoa, packaged and prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, clocks, watches, wallets made of cloth; retail store services in the field of tote bags made of cloth, plastic, or leather; retail store services in the field of briefcases made of leather; retail store services in the field of book bags made of cloth; retail store services in the field of umbrellas made of cloth, plastic, or leather; retail store services in the field of key fobs of leather, clothing, caps and hats, toys, including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments; wholesale distributorships, wholesale stores, and wholesale ordering services all in the field of coffee, tea, cocoa, packaged and prepared foods; computerized on-line ordering services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments. computerized on-line retail store services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments; on-line ordering services all in the field of coffee, tea, cocoa, packaged foods,

8

| | | prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments. on-line retail store services all in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments; computerized on-line gift registry; computerized online ordering services
Financial services, namely, debit, credit, and stored-value card services; charitable fund raising services
Entertainment services, namely, the provision, organization, and production of entertainment, educational, recreational and/or musical events, namely, music shows, live musical performances, concerts, and other live music events and activities; arranging and conducting of personal appearances for entertainment purposes; Publishing and production of musical and sound recordings; providing information in the fields of music, video, television, news, sports, games, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing audio in the fields of music, video, television, news, sports, games, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing video in the fields of music, video, television, news, sports, games, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing graphics in the fields of music, video, television, news, sports, games, cultural events, entertainment, health and wellness, and arts and leisure via communications networks; providing text in the fields of video, television, news, sports, games, cultural events, entertainment, health and wellness, and arts and leisure via communication networks; providing other multimedia content in the fields of music, video, television, news, sports, games, cultur- |
|---|---|---|

US2008 7569975 4

| | | |
|---|---|---|
| | | al events, entertainment, health and wellness, arts and leisure via communications networks; music publishing services; publishing of text, graphic, audio and video works via communications networks; Providing in-store facilities to enable users to program audio, video, text and other multimedia content, including music, concerts, videos, radio, television, news, sports, games, cultural events and entertainment-related programs; production and distribution of radio programs. music production services; entertainment services, namely, providing commentary and articles about music<br><br>Restaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services; catering services; coffee supply services for offices; contract food services; food preparation; preparation of carry out foods and beverages |
| 4538585 |  | Electric milk frothers<br><br>Paper coasters; paper cup sleeves; paper boxes and paper packaging; instructional booklets for making beverages<br><br>Paper cups, non-electric milk frothers; scoops<br><br>Communication services, namely, transmitting streamed and downloadable audio and video entertainment programming via computer, satellite and communications networks; audio entertainment broadcasting and transmission; electronic and digital transmission of voice, data, information, images, signals and messages; providing on-line chat rooms, bulletin boards and community forums for the transmission of messages among computer users concerning entertainment, music, concerts, videos, radio, television, film, news, sports, games and cultural events; delivery of messages by electronic transmission; provision of connectivity services and access to electronic communications networks, for transmission or reception of audio, video or multimedia content; providing multiple user dedicated access to the Internet; broadcasting and downloading service that allows users to playback, sample, download, store, create playlists and stream music, videos, movies, games and entertainment related programming over computers, wireless devices, PDAs, telephones, and digital listening and playback devices |

US2008 7569975 4

| 4572688 |  | Nutritionally fortified beverages; meal replacement and dietary supplement drink mixes, nutritional supplements in the form of foods bars; powdered fruit-flavored dietary supplement drink mix; powdered nutritional supplement drink mix; and vitamin fortified beverages

Audio recordings featuring classical, jazz, contemporary, pop, seasonal, R and B, soul, world, zydeco, reggae, rock, folk and show tunes music; downloadable music via a global computer network and wireless devices; vending machines

Electrical appliances, namely, espresso makers and coffee makers for domestic or commercial use

Electrical appliances, namely, espresso makers and coffee makers for domestic or commercial use

Hand operated coffee grinders and coffee mills, insulated coffee and beverage cups, non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers, non-electric plunger-style coffee makers, and decorative storage containers for food, non-electric tea kettles, tea infusers, tea pots, tea strainers, ceramic figurines, porcelain figurines; paper cups and insulated sleeves for beverage cups

T-shirts, polo shirts, sweatshirts, caps, hats, jackets, shorts, and aprons

flavored milk, milkshakes and milk based beverages; fruit jams, jellies, spreads, and preserves

Ground and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, beverages made with a base of tea, powdered chocolate; sauces to add to beverages; chocolate syrup, flavoring syrups to add to beverages, baked goods, namely, muffins, scones, biscuits, cookies, pastries and breads, sandwiches, granola, ready-to-drink coffee, ready-to-drink tea, and frozen confections; chocolate, candy and chocolate confections; and sauces

Water, and other non-alcoholic drinks, namely, soft drinks, fruit drinks and fruit juices, fruit drinks and soft drinks containing fruit juices, powdered beverage mixes; flavoring syrups for making beverages; flavored and unflavored bottled |

11

waters, fruit juices, sparkling fruit and juice based beverages and soda beverages; frozen fruit beverages and frozen fruit-based beverages

Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; retail store services in the field of coffee, tea, cocoa, packaged and prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, clocks, watches, jewel-ry, books, musical recordings, mouse pads, wallets made of cloth, tote bags made of cloth, plastic, or leather, briefcases made of leather, book bags made of cloth, umbrellas made of cloth, plastic or leather, key fobs of leather, clothing, caps and hats, toys, including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, Christmas ornaments; whole-sale distributorships in the field of coffee, tea, cocoa, pack-aged foods, prepared foods; wholesale stores in the field of coffee, tea, cocoa, packaged foods, prepared foods; wholesale ordering services in the field of coffee, tea, cocoa, packaged foods, prepared foods; computerized on-line ordering services in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic, or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys in-cluding teddy bears, stuffed toys, plush toys, dolls and acces-sories therefor, and Christmas ornaments. computerized on-line retail store services in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewel-ry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic, or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, and Christmas ornaments; on-line ordering services in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appli-ances, housewares, kitchenware, watches, jewelry, books, mu-sical recordings, mouse pads, wallets made of leather, bill-folds made of leather, tote bags made of cloth, plastic, or

leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic, or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, and Christmas ornaments. on-line retail store services in the field of coffee, tea, cocoa, packaged foods, prepared foods, electric appliances, non-electric appliances, housewares, kitchenware, watches, jewelry, books, musical recordings, mouse pads, wallets made of leather, billfolds made of leather, tote bags made of cloth, plastic, or leather, briefcases made of cloth, plastic, or leather, book bags made of cloth, plastic, or leather, umbrellas made of cloth, plastic, or leather, key fobs of leather, clothing, caps, hats, toys including teddy bears, stuffed toys, plush toys, dolls and accessories therefor, and Christmas ornaments; computerized on-line gift registry and ordering services

Financial services, namely, debit, credit, and stored-value card services; charitable fund raising services

Entertainment services, namely, the provision, organization and production of entertainment, educational, recreational and/or musical events, namely, music shows, live musical performances, concerts, and other live music events and activities; arranging and conducting of personal appearances for entertainment purposes; Publishing and production of musical and sound recordings; providing information, audio, video, graphics, and other multimedia content in the field of music via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of video via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of television via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of news via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of sports via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of games via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of cultural events via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of entertainment via communication networks; providing information, audio, video, graphics, text, and other multimedia content in the field of health and wellness via communication networks; providing information, au-

| | | dio, video, graphics, text, and other multimedia content in the field of arts and leisure via communication networks; music publishing services; publishing of text, graphic, audio and video works via communications networks. production and distribution of radio programs; music production services; entertainment services, namely, providing commentary and articles about music<br><br>Restaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services; catering services; coffee supply services for offices; contract food services; food preparation; preparation and sale of carry out foods and beverages |
|---|---|---|

Reg. Nos. 4415862, 4538053, 4538585, and 4572688 are *prima facie* evidence of the exclusive rights of Starbucks to the Siren Logos covered by those registrations. Reg. Nos. 1815938, 1943361, 2120653, and 2266351 are incontestable under 15 U.S.C. § 1065 and therefore conclusive evidence of the rights of Starbucks to the Siren Logos covered by those registrations.

12.    Since 1991, Starbucks and a predecessor have used the FRAPPUCCINO mark in connection with coffee and other beverages. As documented in Exhibit C, the FRAPPUCCINO mark is covered by numerous registrations issued by the U.S. Patent and Trademark Office, including the following:

| Reg. No. | Mark | Goods and Services |
|---|---|---|
| 1745953 | FRAPPUCCINO | Coffee beverages for consumption on or off the premises |
| 2148066 | FRAPPUCCINO | Milk, flavored milk, milk-based food beverages<br><br>Non-carbonated soft drinks |
| 3535367 | FRAPPUCCINO | Coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee, tea, cocoa and/or espresso, ready-to-drink coffee, ice cream, milkshakes and frozen confections |

US2008 7569975 4

Reg. Nos. 1745953, 2148066, and 3535367 are incontestable under 15 U.S.C. § 1065 and therefore conclusive evidence of the rights of Starbucks to the FRAPPUCCINO mark covered by those registrations.

13.     Since 1997, Starbucks and a predecessor have used the VENTI mark in connection with coffee and other beverages. As documented in Exhibit D, the VENTI mark is the subject of the following registration issued by the U.S. Patent and Trademark Office:

| Reg. No. | Mark | Goods and Services |
|----------|------|--------------------|
| 2175431 | VENTI | milk, flavored milk, milk-based food beverages<br><br>coffee, tea and espresso; milkshakes; coffee, tea and espresso-based beverages |

Reg. No. 2175431 is incontestable under 15 U.S.C. § 1065 and therefore conclusive evidence of the right of Starbucks to the VENTI mark covered by that registration.

14.     The STARBUCKS Word Marks, the Siren Logos, the FRAPPUCCINO mark, and the VENTI mark (collectively, the "Starbucks Marks") have been registered as trademarks in more than 180 countries.

15.     Starbucks also has registered the original artistic work on its logos with the U.S. Copyright Office. As documented in Exhibits E and F, Starbucks owns U.S. Copyright Registration No. VA 875-932 for the Siren Logo and Registration No. VA 1-768-520 for the 40th Anniversary Siren Logo (collectively, the "Starbucks Copyrights").

16.     Starbucks retail locations prominently display the Starbucks Marks and Starbucks Copyrights. Starbucks widely uses the Starbucks Marks and Starbucks Copyrights in these locations on signage, aprons, cups, mugs, napkins, gift cards, and on coffee and other food and beverage products.

US2008 7569975 4

17.     The Starbucks Facebook page has more than 35 million "likes" and more than 23 million visits. The Starbucks Twitter account has more than 8.75 million followers. Both platforms prominently feature the Starbucks Marks and Starbucks Copyrights.

18.     The Starbucks Marks and Starbucks Copyrights have figured prominently in pop culture in the United States. The brand has appeared in the television programs *Parks & Rec, The Voice, Ellen,* and *Real Time*, and in the films *Jurassic World*, *The Devil Wears Prada, Zoolander, License to Wed, The Proposal, Clueless, 127 Hours,* and *You've Got Mail,* among others.

19.     The STARBUCKS brand is recognized as among the world's most famous brands. A 2015 report by BrandZ ranked STARBUCKS as the 29th most valuable global brand, alongside Nike and above brands such as Toyota and Budweiser.

20.     As a result of the extensive and prominent use and registrations described above, the Starbucks Marks are well-known and have become famous, and were famous prior to any of Defendant's complained-of activities.

21.     Starbucks has entered into license agreements with hundreds of third-party authorized foodservice accounts, which also prominently use and display the Starbucks Marks and Copyrights under license from Starbucks. These licensed foodservice accounts enable Starbucks to provide products to college campuses, offices, cruise line catering services, hospitals, hotels, airlines, and other outlets.

22.     Starbucks is highly selective in choosing which foodservice accounts it will authorize, considering numerous qualitative factors in the selection process. When assessing a potential foodservice account, Starbucks takes many qualitative factors into account, including geography, proximity to other Starbucks locations or accounts, the reputation of affiliated and

16

neighboring businesses, and the appropriateness of the location for the premium brand image that Starbucks has cultivated.

23.     Foodservice accounts may serve a number of products, including brewed coffee, espresso-based beverages, hot cocoa, blended beverages, and many others. Starbucks provides accounts with the roasted coffee beans, cocoa powder, and sauces and syrups necessary to make these beverages. Starbucks also provides accounts with storage, serving, cleaning, and preparation supplies and labels and marketing. Finally, foodservice accounts may also be eligible to purchase and use branded signage, aprons, cups, napkins, marketing materials, and the like.

24.     Authorized foodservice accounts undergo rigorous training and are subject to strict quality control standards. They are contractually required to use recipes and preparation processes supplied by Starbucks. To control the quality of the beverages produced by foodservice accounts, Starbucks has set numerous coffee standards, approves the type of machines that can be used to produce beverages, requires only authorized representatives or agents to calibrate machines, and engages in other activities to ensure that a foodservice account beverage is consistent in quality and taste with a Starbucks retail outlet operated by Starbucks.

25.     Additional quality measures for foodservice accounts include maintaining all equipment in clean and working order and adhering to all health codes and food-safety laws. Foodservice accounts are required to clean equipment daily, maintain equipment in good condition, make service stickers visible showing the model and age of equipment being used, and keep cleaning supplies on hand. Starbucks routinely inspects its foodservices account for compliance with these requirements and maintains the right to cancel any foodservice account that fails to adhere to Starbucks' quality guidelines.

26.     To distinguish a foodservice account from a Starbucks store, Starbucks foodservice accounts use the "We Proudly Serve Starbucks®" legend and logo shown below:

 **WE PROUDLY SERVE STARBUCKS**™

The "We Proudly Serve" mark serves to distinguish the beverages offered in such a setting from the full experience of a Starbucks cafe. Starbucks closely tracks use of this designation, and authorized foodservice accounts may only use the designation in the approved lock-up and must use non-Starbucks branding as their principal branding.

27.     Starbucks closely tracks the use of its logos by its foodservice accounts to ensure compliance with Starbucks intellectual property policies. Foodservice accounts must use non-Starbucks branding as their principal branding, so that consumers understand that the account, not Starbucks, is preparing and serving the beverage. Starbucks provides some marketing materials, such as counter display cards, for use by foodservice accounts. All other marketing materials must come to Starbucks for review and approval before the foodservice accounts may use them. As with Starbucks' quality guidelines, Starbucks has the right to cancel any foodservice account that fails to adhere to Starbucks brand guidelines.

<b>Defendant and His Unlawful Activities</b>

28.     Defendant owns and operates a business known as "The Mermaid Cafe" in Thomasville, Georgia.

29.     In April 2015, Starbucks discovered a Facebook page for Defendant's Mermaid Cafe business. At that time, the Facebook page announced that the business was "Coming Soon" and prominently displayed this logo:

18



The page also contained numerous posts featuring images of products bearing the Starbucks Marks and Starbucks Copyrights, and posts with misleading and confusing language, such as: "Thanks to the fine folks at the Starbucks Food Service Corp we are proud to announce that The Mermaid Cafe will Proudly Serve Starbucks," "We Proudly Serve Starbucks," and "TheMermaidCafeServesStarbucks." Excerpts from Defendant's Facebook page as viewed on April 1, 2015, are attached as Exhibit G.

30.    Defendant's Facebook page also contained a promotion offering "free coffee for a whole year," which prominently displayed the Starbucks Siren Logo on the ad and on a cup design, leading a commenter to pronounce "I'm so excited to be able to get Starbucks in tville":

US2008 7569975 4



31.     A post from March 2015 on the Mermaid Cafe Facebook page inquired: "Are you an actual Starbucks?" Defendant responded: "we are on the starbucks food service program [sic]." This statement was false, misleading, designed to cause and caused actual confusion in the marketplace, as shown below:

US2008 7569975 4



32.     As reflected in Exhibit H, Starbucks discovered other violations of the Starbucks Marks and Starbucks Copyrights on Twitter and Yelp.

33.     As a result of Defendant's activities, Starbucks sent a cease and desist letter to Mr. Steven Blood on April 2, 2015. As reflected in Exhibit I, the letter was sent to various addresses and e-mail addresses thought to be associated with Mr. Blood, and requested a response by April 6, 2015, in light of the serious nature of the allegations. According to Federal Express records, at least one copy was delivered to Defendant's business address. No response was received.

34.     Starbucks continued to investigate the activities of Defendant in an attempt to determine whether the business was legitimate. Sometime in mid-April, 2015, Defendant made some changes to its website and social media pages, including removing the infringing logo

US2008 7569975 4

shown in Paragraph 29 above. However, Starbucks discovered new violations, including Defendant's use of misleading statements like "Choose from our daily Starbucks Selections."

35.     On April 24, 2015, the investigator retained by Starbucks visited the premises of Defendant's business. As reflected in Exhibit J, the business appeared closed at that time, but signage at the site featured the infringing logo shown in Paragraph 29, and the investigator observed a mini-refrigerator featuring the 40th Anniversary Siren Logo.

36.     In light of Defendant's ongoing violations of its rights, Starbucks asked its investigator to hand-deliver the letter shown in Exhibit I to Defendant at the Mermaid Cafe. On April 24, 2015, and May 4, 2015, the investigator attempted to deliver the letter at the cafe and a residential address associated with Mr. Blood, but the investigator could not locate Mr. Blood. On May 4, 2015, when the investigator attempted to deliver the letter to Mr. Blood at the cafe, he spoke with Mr. Kirankumar Patel, owner of the Days Inn hotel in Thomasville, who informed the investigator that Mr. Blood had leased the cafe location from Mr. Patel and that Mr. Blood assured Mr. Patel that he had the rights to sell the Starbucks brand. The investigator left a copy of the letter shown in Exhibit I with Mr. Patel to give to Mr. Blood. As reflected in Exhibit K, Starbucks also sent a letter to the Days Inn hotel at the same address as Defendant on May 1, 2015, notifying it of the violations. Starbucks sent a follow-up letter to the Days Inn hotel on May 14, 2015, as reflected in Exhibit L.

37.     Starbucks received no response to these letters. Starbucks continued to investigate the infringements, finding that they changed almost daily—some infringements were removed, but others appeared on social media. Defendant's business continued to announce "Grand Opening" dates, but the opening was delayed on numerous occasions. Starbucks continued to monitor the situation to see whether Defendant's business would actually open. On May

28, 2015, a Facebook post announced that the Grand Opening was moved to June 15, and displayed the following image, which states "The Mermaid Cafe We Proudly Serve Starbucks":



38.     Starbucks also notified Facebook that Defendant was operating a Facebook page using the misleading username www.facebook.com/TheMermaidCafeServesStarbucks.com. On June 2, 2015, Facebook removed this username for violating the Facebook Statement of Rights and Responsibilities.

39.     On June 26, 2015, and as reflected in Exhibit G, Defendant announced on Facebook that the "Mermaid Cafe" business was open as of that date. A customer commented: "Sweet Starbucks in Thomasville, Im so excited!! [sic]." The Facebook page for the Mermaid Cafe on that day depicted a man in a green apron with the 40th Anniversary Siren Logo holding the "first dollar" earned by the business, as shown below:

US2008 7569975 4



40.     In addition to the Starbucks apron shown in Paragraph 39, as of June 26, 2015, Defendant's Facebook page contained videos and other images showing that Defendant was using at least the following: (a) branded Starbucks cups; (b) a mini-refrigerator featuring the Starbucks 40th Anniversary Logo, and containing canned STARBUCKS REFRESHERS® and bottled FRAPPUCCINO® beverages; (c) handwritten signage in front of pump coffee pots labeled as "STARBUCKS" coffee products; (d) statements announcing "Grand Opening Weekend Specials" with "12 Oz. Starbucks French Roast or House Blend 99 Cents" and other similar statements; and (e) oral statements in the video stating "proudly serving Starbucks coffee." Counsel for Starbucks called the Mermaid Cafe on June 29, 2015, spoke to a representative there outlining the violations, and asked for a return call from Defendant. Starbucks did not receive a return call.

24

41.     On or around July 2, 2015, Defendant posted a new logo on Facebook, as shown here next to the Starbucks Siren Logo:

          

The new logo shares striking similarities to the Starbucks Siren Logo, including a double circle design, the color green, a centrally-located Mermaid design, and white block letters against a green background appearing within the circle above and below the Mermaid figure.

42.     On July 17, 2015, the investigator retained by Starbucks again visited the premises of Defendant's business. The investigator found that Defendant was open for business and is displaying a large flag on the front of the store featuring the Starbucks Siren Logo:

          

43.     The investigator also found that Defendant is displaying a large banner on the outside of the building proclaiming "The Mermaid Cafe We Proudly Serve Starbucks," with the word "Starbucks" mostly obscured in a temporary manner by what appears to be duct tape:

25

 

44.     In addition, the investigator found that Defendant is selling coffee in at least two sizes of Starbucks-branded cups featuring the Starbucks Siren Logo and the STARBUCKS word mark:

 

45.     On July 30, 2015, Defendant's Mermaid Cafe posted a "Frappuccino Dealio" on its Facebook page, falsely indicating that it offers FRAPPUCCINO beverages:

US2008 7569975 4



46.    On August 20, 2015, Defendant's Mermaid Cafe posted a buy one get one free of-fer for "Specialty Starbucks Coffee Drinks" on its Facebook page, falsely representing that De-fendant offers Starbucks products:



47.     On August 26, 2015, Defendant's Mermaid Cafe sent out an electronic offer via Facebook reproducing the 40th Anniversary Siren Logo, falsely representing that Defendant offers "Starbucks products," and using an unauthorized imitation of the FRAPPUCCINO mark in connection with Defendant's goods:



48.     On September 10, 2015, the following exchange appeared on the Facebook page for the Mermaid Cafe:



**Patricia Lee Shiflett** Everytime I go by there there's no one there. Lunch time, mornings, afternoon…..

👍 1 · September 10 at 3:00pm



**The Mermaid Cafe** we were here all day until 4:30 PM today, sorry we missed you Patricia Lee Shiflett but we are short staffed today as we had a waitress bail on us due to some really bad home life issues and we had to close early today to look for DEPENDABLE hired help to bring in that we can trust. We took the opportunity to also restock on our inventory.

👍 2 · September 10 at 4:27pm

49.     On September 10, 2015, the following new claim to sell FRAPPUCCINO beverages appeared on the Facebook page for the Mermaid Cafe:



**The Mermaid Cafe**
Yesterday at 6:39am · 🌐

It feels like Fall at The Mermaid Cafe & we have the goods to give you a taste of it! Try our Pumpkin Pie Pancakes, Our Pumpkin Pie French Toast, Our Pumpkin Spice Lattes, Our Pumpkin or Apple Spice Giant Muffins, Our Pumpkin Spice Cheesecake or even our Pumpkin Pie or Pumpkin Spice Frappuccinos!

Our All You Can Eat Specials are in play today so come see us at the corner of Jackson and U.S. Highway 19 South at The Days Inn here in Thomasville!

50.     On September 13, 2015, the following unauthorized uses of the STARBUCKS COFFEE mark, the Siren Logo, and the VENTI mark appeared on the Facebook page for the Mermaid Cafe:



**The Mermaid Cafe**
September 13 at 12:43pm · 🌐

Our Super Fall Special at The Mermaid Cafe is on Pumpkin Spice Coffee!!! Your choice of Iced or Hot Pumpkin Spice in either Tall for just $1.99 plus tax or Grande for $2.99 plus tax or Venti for just $3.99 plus tax. Also Available is our 32 Ounce Captain Insano Size (not pictured) for only $4.99 plus tax. BONUS you get a Free Nonni's Biscotti when you order a Grande or Larger! Come see us today and get your fall pumpkin fix on now at the corner of Jackson and U.S. Highway 19 ...
See More



👍 Like          💬 Comment          ➡ Share

51.     On September 14, 2015, the following unauthorized use of the 40th Anniversary

Siren Logo appeared on the Facebook page for the Mermaid Cafe:

US2008 7569975 4



**The Mermaid Cafe** at The Mermaid Cafe
4 hrs · 🌐

Pumpkin Spice & Everything Nice is at **The Mermaid Cafe** right here in
Thomasville at The **Days Inn** at the corner of Jackson and U.S. Highway 19 South.
We also have All You Can Eat Biscuits & Gravy, All you can eat Pancakes and All
you can eat French Toast. Breakfast is served all day long and you can order for
pickup at **www.TheMermaidCafeThomasville.com** & we also offer Free Delivery
on orders of $25 or more. Come see us today!

Pumpkin Spice & todo lo bonito está en el Mermaid C... See More



     52.    On September 18, 2015, outside counsel for Starbucks forwarded the correspond-

ence attached as Exhibit M to Defendant to give him a final opportunity to avoid litigation by

discontinuing his unlawful conduct. Starbucks received no response to the letter, and, on October

20, 2015, an additional investigative visit disclosed that Defendant's business continued to dis-

play signage, equipment, and a menu that, between them, featured the Starbucks Siren Logo, the

Starbucks 40th Anniversary Siren Logo, and the STARBUCKS word mark:








US2008 7569975 4

 

**Defendant's Activities Violate the Intellectual Property Rights of Starbucks**

53.     Defendant has used identical and confusingly similar copies of the Starbucks Marks and identical and substantially similar copies of the Starbucks Copyrights in connection with its business, including but not limited to use of the Starbucks Siren Logo, the 40th Anniversary Siren Logo, the STARBUCKS word mark, the FRAPPUCCINO mark, the VENTI mark, and closely similar variations of those marks and logos.

54.     Defendant has made numerous false and misleading statements calculated to give consumers the false impression that Defendant is affiliated with or authorized by Starbucks, when that is not the case.

55.     Defendant and Starbucks operate retail stores featuring competitive or closely related coffee and other cafe products.

56.     Defendant and Starbucks overlap in the customers they target and use the same advertising media, including but not limited to social media and billboards.

57.     Defendant is not licensed or otherwise authorized to use the Starbucks Marks or Starbucks Copyrights, the "We Proudly Serve Starbucks" designation, or to imply any affiliation with Starbucks or its authorized foodservice accounts. Starbucks has not approved or monitored

US2008 7569975 4

the quality of Defendant's products and services or provided Defendant with any standards or guidelines for product or service quality.

58.    Although the goods provided under the Starbucks Marks by Starbucks and its affiliates are considered premium within the industry, they nevertheless are not high-priced "big-ticket" items. Instead, the price even the most expensive good sold under the Starbucks Marks is under ten dollars.

59.    Starbucks and its foodservice accounts target their goods and services to the same categories of customers as does Defendant.

60.    Like Defendant, Starbucks and its foodservice accounts advertise goods and services associated with the Starbucks Marks on billboards and through social media.

61.    Starbucks has objected to Defendant's infringing activities, yet Defendant continues to engage in a pattern of infringement and other unauthorized conduct. Defendant's use has been knowing, intentional, and in willful disregard of the rights of Starbucks.

62.    Defendant's activities are likely to cause confusion, mistake, and deception among consumers, and indeed, have caused such confusion.

63.    Defendant's activities are likely to dilute the distinctive nature of the famous Starbucks Marks through blurring and through tarnishment.

64.    Defendant's activities constitute infringement of the Starbucks Copyrights.

65.    These intentional and wrongful acts of Defendant have caused and are causing great and irreparable injury to Starbucks, which damage cannot be accurately calculated and will continue unless this Court restrains Defendant from the further commission of these acts. Starbucks is without adequate remedy at law. Because Defendant is not affiliated with Starbucks, Starbucks lacks any means other than the Court's intervention to bring Defendant's misconduct

US2008 7569975 4

to an end. In particular, Starbucks has lost control over its reputation because consumers will associate any dissatisfaction they experience with Defendant's goods and services with Starbucks, rather than Defendant; moreover, if any of Defendant's customers suffer injuries as a result of defects in Defendant's Starbucks-branded goods, those customers will inevitably seek to hold Starbucks accountable. Starbucks' reputation also is at risk because Defendant's "branding" practices include the display of a banner with the STARBUCKS trademark partially obscured by duct tape and the use of handwritten signs bearing the same mark, neither of which ever would be approved by Starbucks. It also is at risk because of Defendant's on-line admission that he has difficulty finding dependable employees to work at the Mermaid Cafe. Finally, Defendant's misconduct threatens Starbucks' investment in, and relationships with, its foodservice accounts because those accounts will begin to question the value of their affiliation with Starbucks if Defendant's business is permitted to use Starbucks' intellectual property without being subject to the controls to which Starbucks' genuine foodservice accounts are subject. It is impossible to assign a monetary value to these types of damage to the goodwill of the Starbucks Marks.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)(a)

66.    Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

67.    Starbucks possesses valid and enforceable rights in the Starbucks Marks in connection with all of the goods and services at issue in this case by virtue of its extensive use, promotion, and advertisement of the marks, and its numerous registrations, and has possessed such rights at all times material hereto.

US2008 7569975 4

68.   Defendant has no right or authority to make, sell, or otherwise use in commerce any goods bearing the Starbucks Marks or marks likely to cause confusion with them, or to promote or advertise any services using those trademarks.

69.   Nevertheless, Defendant has continued to offer to sell, sell, and otherwise use in commerce goods bearing the Starbucks Marks and marks and other indicia likely to cause confusion with them, and has made clear its intention to continue doing so, despite instructions from Starbucks to cease and desist.

70.   Defendant is engaged in the same business as Starbucks, namely, the retail operation of coffee and cafe stores, and is marketing and offering to sell its infringing products and to provide its infringing services in the same channels of trade and to the same customer base as those of Starbucks.

71.   Defendant's actions have caused, and will continue to cause, a likelihood of confusion among relevant purchasers as to whether Defendant's goods and services are provided by, authorized by, or affiliated with Starbucks.

72.   Defendant's actions constitute infringement of the Starbucks Marks in violation of 15 U.S.C. § 1114.

73.   Defendant's infringing activity has caused, and will continue to cause, substantial injury to the public and irreparable harm to Starbucks, including by injuring the goodwill associated with the Starbucks Marks, reducing the ability of Starbucks to control the use of the Starbucks Marks and the consistent quality of products and services offered under the Starbucks Marks, and by causing a likelihood of confusion among customers and potential customers of Starbucks. Starbucks will continue to suffer irreparable harm unless the Court enjoins Defendant's conduct.

US2008 7569975 4

74.     At all material times, Defendant's infringing activity has been willful, knowing, and intentional.

75.     Starbucks is entitled to injunctive relief, its actual damages, an accounting of Defendants' profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

### COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(a)

76.     Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

77.     By virtue of the actions described above, Defendant has unfairly competed with Starbucks, and has caused, and is causing, a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Starbucks, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Starbucks, all in violation of 15 U.S.C. § 1125(a) and other applicable state and common laws.

78.     By virtue of the actions described above, Defendant has, in commercial advertising or promotion of Defendant's goods and services, misrepresented the nature, characteristics, or qualities of Defendant's goods, services, or commercial activities, and has made false descriptions and false designations of origin of its goods and services, all in violation of 15 U.S.C. § 1125(a).

79.     Defendant's actions have caused substantial injury to the public and to Starbucks, and Defendant is liable to Starbucks for such injury. Starbucks will continue to suffer irreparable harm unless the Court enjoins Defendant's conduct.

80.     Starbucks is entitled to injunctive relief, its actual damages, an accounting of Defendants' profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

## COUNT III – FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)

81.    Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

82.    Starbucks possesses valid and enforceable rights in the Starbucks Marks in connection with all of the goods and services at issue in this case by virtue of its extensive use, promotion, and advertisement of the Starbucks Marks, and has possessed such rights at all times material hereto.

83.    By virtue of their extensive use, registration, advertising, promotion, and consumer and marketplace recognition, the Starbucks Marks are famous and distinctive, and are entitled to protection against likely dilution by blurring and by tarnishment.

84.    Defendant commenced the activities complained of herein after the Starbucks Marks had become famous.

85.    Defendant's use of variations of the famous Starbucks Marks is likely to dilute the distinctive nature of those famous trademarks.

86.    Defendant's actions have caused, and will continue to cause, irreparable harm to Starbucks, as a result of the likely dilution of the famous Starbucks Marks, and Starbucks has suffered substantial damages, as well as the continuing loss of goodwill and reputation established by Starbucks in its trademarks.

87.    At all material times, Defendant's unlawful activity has been willful, knowing, and intentional.

88.    Starbucks will continue to suffer irreparable harm unless the Court enjoins Defendant's conduct.

US2008 7569975 4

## COUNT IV: COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 et seq.

89.     Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

90.     Starbucks owns valid, enforceable copyrights for the Siren Logo and the 40th Anniversary Siren Logo, which are the subject of U.S. Copyright Registration Nos. VA 875-932 and VA 1-768-520, respectively.

91.     Defendant is infringing the Starbucks Copyrights by making unauthorized use of the Starbucks Copyrights or substantially similar designs.

92.     Defendant's activities are in violation of 17 U.S.C. § 101 et seq., and especially § 501 et seq.

93.     Defendant's actions have been willful, knowing, and intentional.

94.     Starbucks has been damaged by Defendant's activities and will continue to sustain irreparable harm, for which there is no adequate remedy at law, unless Defendant's infringing actions are enjoined.

95.     Pursuant to Section 504(b) and 504(c) of the Copyright Act, 17 U.S.C. § 504(b)-(c), Starbucks is entitled to recover from Defendant the damages it has sustained and will sustain and any profits obtained by Defendant as a result of or attributable to the infringement, or at the election of Starbucks, statutory damages up to $150,000 per work infringed.

96.     In accordance with Section 505 of the Copyright Act, 17 U.S.C. § 505, Starbucks also is entitled to recover its costs of litigation, including attorneys' fees.

US2008 7569975 4

## COUNT V: UNFAIR AND DECEPTIVE TRADE
## PRACTICES UNDER STATE LAW
### O.C.G.A. § 10-1-370 *et seq.*

97.     Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

98.     Defendant has used, without the consent of Starbucks, a reproduction, counterfeit, copy, and colorable imitation of the Starbucks Marks, and has applied such reproduction, counterfeit, copy and colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be sold or distributed in the state of Georgia.

99.     Defendant's conduct is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendant's goods, causing a likelihood of confusion as to Defendant's affiliation, connection, or association with Starbucks, and otherwise damaging the public. Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of O.C.G.A. §§ 10-1-370 to 10-1-375.

100.     Defendant's actions have caused, and will continue to cause, irreparable harm to Starbucks as a result of such activities, and Starbucks has suffered substantial damages, as well as the continuing loss of goodwill and reputation established by Starbucks in its trademarks.

101.     Starbucks is therefore entitled to injunctive relief, to an award of its actual damages, and to an accounting of any profits enjoyed by Defendant as a result of its unlawful conduct.

40

US2008 7569975 4

## COUNT VI: TRADEMARK DILUTION UNDER STATE LAW
### O.C.G.A. § 10-1-451(b) *et seq.*

74.     Starbucks incorporates by reference each of the preceding paragraphs as if set forth here.

75.     Starbucks possesses valid and enforceable rights in the Starbucks Marks in connection with all of the goods and services at issue in this case by virtue of its extensive use, promotion, and advertisement of the Starbucks Marks, and has possessed such rights at all times material hereto.

76.     By virtue of the extensive use, registration, advertising, promotion, and consumer and marketplace recognition, the Starbucks Marks are distinctive, and are entitled to protection against likely dilution by blurring.

77.     Defendant commenced the activities complained of herein after the Starbucks Marks had become distinctive.

78.     Defendant's use of variations of the distinctive Starbucks Marks is likely to injure the business reputation of Starbucks and dilute the distinctive nature of the Starbucks Marks.

79.     Defendant's actions have caused, and will continue to cause, irreparable harm to Starbucks, as a result of the likely dilution of the distinctive Starbucks Marks, and Starbucks has suffered substantial damages, as well as the continuing loss of goodwill and reputation established by Starbucks in its trademarks.

80.     At all material times, Defendant's unlawful activity has been willful, knowing, and intentional.

81.     Starbucks will continue to suffer irreparable harm unless the Court enjoins Defendant's conduct.

82.     Starbucks is therefore entitled to injunctive relief.

US2008 7569975 4

## PRAYER FOR RELIEF

Starbucks therefore respectfully requests that this Court grant it the following relief:

A.    Findings that Defendant has:

      1.    infringed the Starbucks Marks under federal law;

      2.    infringed the Starbucks Copyrights;

      3.    engaged in false designation of origin, passing off, deceptive trade practices, and unfair competition; and

      4.    engaged in likely dilution of the famous Starbucks Marks; and

      5.    engaged in activities that were at all times willful, knowing, and intentional.

B.    An injunction preliminarily and permanently enjoining Defendant and its employees, agents, partners, officers, directors, shareholders, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

      1.    from making any use whatsoever of the Starbucks Marks or any other trade names or marks that are likely to cause confusion with the Starbucks Marks, including but not limited to the marks shown herein and any use of Defendant's mermaid logo, the "We Proudly Serve Starbucks" designation or variations thereof, in connection with the sale, offering for sale, distribution, promotion, or advertisement of food and/or beverage products or the operation of a restaurant, coffee store or cafe;

      2.    from representing by any means whatsoever, directly or indirectly, that Defendant, any goods or services offered by Defendant, or any activities

US2008 7569975 4

undertaken by Defendant, are associated, authorized by or connected in any way with Starbucks;

3.     from making any use of the Starbucks Copyrights or any substantially similar logos, images, or other works;

4.     within 10 days, to produce to counsel for Starbucks all of Defendant's books, records, and accounts covering all offers for sale, or sales of Defendant's Mermaid Cafe business; and

5.     file with this Court and serve on counsel for Starbucks, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction.

C.     An Order requiring Defendant:

1.     to account for any and all profits arising from the foregoing acts of infringement, false designation of origin, passing off, misrepresentation, unfair competition, dilution, and misappropriation in accordance with 15 U.S.C. § 1117 and other applicable laws;

2.     to pay statutory damages as provided under 17 U.S.C. § 101 et seq.;

3.     to pay Starbucks compensatory damages in an amount as yet undetermined caused by the foregoing acts in accordance with 15 U.S.C. § 1117, 17 U.S.C. § 101 et seq; O.C.G.A. § 10-1-373(b); O.C.G.A. § 51-1-6 and other applicable laws;

4.     to pay Starbucks punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant;

US2008 7569975 4

5.      to pay Starbucks treble monetary relief pursuant to 15 U.S.C. § 1117;

6.      to pay the taxable costs and attorney fees incurred by Starbucks in this ac-

tion pursuant to 15 U.S.C. § 1117; and

7.      to pay Starbucks prejudgment interest on each of the foregoing monetary

awards.

D.      That this case be tried to a jury.

E.      Any further relief the Court deems just and warranted.

Respectfully submitted,

/s/Theodore H. Davis Jr.
Kilpatrick Townsend & Stockton LLP          Theodore H. Davis Jr.
1100 Peachtree Street                        Ga. Bar No. 212913
Suite 2800                                   Jared S. Welsh
Atlanta, Georgia 30309-4528                  Ga. Bar No. 940433
404-815-6500

Attorneys for Plaintiff Starbucks Corporation,
d/b/a Starbucks Coffee Company

44

## VERIFICATION

I, Michelle Burns, upon penalty of perjury, state that the following is true and correct to the best of my knowledge and belief:

I am employed by Starbucks as senior vice president, Branded Solutions.

I have read the foregoing Verified Complaint. Each of the allegations made therein are true and accurate to the best of my information and belief.

I base the foregoing verification on the following: With respect to the business practices of Starbucks, I base my statement on first-hand knowledge and/or records kept by Starbucks in the normal course of business. As to allegations specific to the Defendant in this case, I base my verification on information gathered on behalf of Starbucks by its agents and believed by me to be true and accurately reported.

Dated: November 9, 2015

45